IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD J. VIEIRA,<br><br>    Petitioner,<br><br>vs.<br><br>Robert L. Ayers, as Acting Warden of San Quentin State Prison,<br><br>    Respondent. | Case No. CV. F-05-1492-OWW<br><br>DEATH PENALTY CASE<br><br>ORDER GRANTING PETITIONER'S MOTION TO HOLD FEDERAL PROCEEDINGS IN ABEYANCE DURING PENDENCY OF STATE EXHAUSTION PETITION |

This matter is before the Court on the motion of Petitioner Richard J. Vieira ("Vieira") to hold federal proceedings in abeyance pending litigation of Vieira's state post-conviction petition. Respondent Robert L. Ayers, As Acting Warden of San Quentin State Prison (the "Warden") opposes the motion. The Warden advocates deleting the unexhausted claims from the federal petition and proceeding with the exhausted claims while the California Supreme Court simultaneously presides over the state petition.

**I.    Background Facts.**

Vieira was sentenced to death on March 30, 1992 in Stanislaus County for the cult related deaths of four victims. He was tried first among his co-defendants, a total of five. One of his co-defendants, Michelle Evans, testified against him and the other four in exchange for lenient treatment. Following a successful change of venue motion, the other four co-defendants were tried a year after Vieira in Alameda County.

On November 29, 1995, Richard L. Rubin was appointed to represent Vieira on direct appeal and post-conviction matters. After several extensions, Vieira's opening brief was filed on April 16, 2001.[1] The People of the State of California also requested several extensions to file the respondent's brief, which was filed on March 7, 2002. After numerous requests, the California Supreme Court granted Vieira a final extension of time within which to file his reply brief up to and including September 26, 2003.[2]

As alleged in Vieira's state habeas corpus petition, Mr. Rubin made a substantial effort to complete investigation of Vieira's potential post-conviction claims, but he was unable to do so due to lack of resources. By August of 2004, Mr. Rubin was involved in briefing additional issues in the direct appeal requested by the California Supreme Court. He also became quite distracted and involved in a number of personal family crises. In early 2005, Mr. Rubin sought assistance with the post-conviction proceedings and approached Wesley Van Winkle about entering the case as associate counsel. Before a request for appointment of associate counsel could be filed, the state high court issued its direct appeal decision on March 7, 2005. Mr. Rubin filed a petition for rehearing and the court modified the decision on May 26, 2005. The motion for appointment of Mr. Van Winkle thereafter was filed and was granted on August 10, 2005. The docket entry for this order states:

> Good cause appearing, the application of appointed counsel Richard L. Rubin for the appointment of associate counsel, filed July 25, 2005, is granted. [¶] Wesley A. Van Winkle is hereby appointed as associate counsel of record for condemned prisoner Richard John Vieira. Counsel is appointed for purposes of all postconviction proceedings in this court, and for subsequent proceedings, including the preparation and filing of a petition for clemency with the Governor of California, as appropriate.

The first task for Messrs. Rubin and Van Winkle to complete was a petition for certiorari to the United States Supreme Court, which was filed on August 23, 2005. Next, further investigation was undertaken. From reading the allegations in the state petition, it appears that investigation efforts were focused in at least three areas: mental state issues (fetal alcohol syndrome, family history of schizophrenia, neurofibromatosis), prosecutorial misconduct issues involving failure to disclose

---

[1] Some information in this recitation of the facts is taken from the docket of Vieira's appellate proceedings, under California Supreme Court Case No. S026040.

[2] In fact, he filed his reply brief on September 11, 2003, fifteen days early.

potentially exculpatory evidence, and related unreliability of prosecution witnesses (notably Michelle Evans and the sheriff's deputy describing Vieira's custodial statement). Currently before the Court are substantial allegations, supported by declaratory and documentary evidence[3] that Vieira may not have actually killed the female victim he was said to have killed, that he did not tell investigating officers he "condoned" the killings of all four victims, and that Ms. Evans was significantly more culpable in the killings than portrayed at trial

In the interim, the United States Supreme Court denied certiorari on Vieira's direct appeal on October 31, 2005. This date commenced the running of the one-year federal statute of limitations pursuant to 28 U.S.C. § 2244(d). On November 22, 2005, Vieira commenced these federal proceedings by requesting a stay of execution and appointment of counsel. After receiving a recommendation from the Selection Board for the Eastern District of California, the Court, on February 10, 2006, appointed Mr. Van Winkle as interim counsel until second counsel could be located. On March 15, 2006, Assistant Federal Defender Timothy J. Foley was appointed as co-counsel. A substantial investigation effort followed. The Court approved comprehensive expert and investigative services in two phased case management budgets for the case[4] and established a due date for the federal petition on October 31, 2006. On October 29, 2006, two days before its due date and the expiration of the one-year statute of limitations, Vieira filed his 291-page federal petition, which he concedes is mixed, i.e., presents exhausted and unexhausted claims. Two days later, October 31, 2006, he filed a 564-page petition in the California Supreme Court. Accompanying the state petition are fourteen volumes of supporting evidentiary documentation, comprised of 255 separate exhibits. Vieira lodged a conformed copy of his state petition and accompanying exhibits in this Court.

**II.     Timeliness Issues.**

The timeliness of Vieira's state habeas corpus petition is at the heart of the Warden's argument that the request for staying the mixed federal petition should be denied. Under the Timeliness Standards adopted by the California Supreme Court for filing habeas corpus petitions, if Vieira had filed his state

---

[3] The declaratory and documentary evidence is appended to the state habeas corpus petition.

[4] The orders approving the Phase I and Phase II budgets are filed under seal pursuant to 18 U.S.C. § 3599(f).

petition within 180 days after the final due date for his reply brief, the petition would have been considered presumptively timely. The language used by the Supreme Court is that it would be "presumed to be filed without substantial delay." Supreme Court Policies, Policy 3, Standard 1-1.1. The parties agree that 180 days after the final due date for Vieira's reply brief (September 26, 2003) was March 24, 2004. A state habeas corpus petition filed more than 180 days after the final due date for the filing of the appellant's reply brief nonetheless "may establish absence of substantial delay if it alleges with specificity facts showing the petition was filed within a reasonable time after petitioner or counsel (a) knew, or should have known, the facts supporting a claim and (b) became aware, or should have become aware, of the legal basis for the claim." *Id*., Standard 1-1.2. A petition filed after substantial delay may still be considered timely where the petitioner establishes "good cause for the delay" by a "showing of particular circumstances sufficient to justify substantial delay." *Id*., Standard 1-2. A state petition that is not presumptively timely, or does not demonstrate the absence of substantial delay, or does not show particular circumstances to justify substantial delay "*may* be denied as untimely." *Id*., Standard 1-3 (emphasis added). The Policies further allow for tolling of the 180-day presumptively timely filing period when the court authorizes the appellant to file supplemental briefing. *Id*., Standard 1-4.

**III.   Standards for Holding a Mixed Petition in Abeyance and Staying Federal Proceedings During State Exhaustion.**

When a court is presented with a mixed petition, it may not grant relief on any of the unexhausted claims. 28 U.S.C. § 2254(b)(1).[5] Prior to the filing of *Rhines v. Weber*, 544 U.S. 269 (2005), district courts would routinely dismiss mixed petitions, or, alternatively give petitioners the option of withdrawing unexhausted claims and proceed on fully exhausted petitions. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982), *quoted by Jackson v. Roe*, 425 F.3d 654, 658 (9th Cir. 2005). A convoluted withdrawal, abeyance, and re-amend procedure was developed in the Ninth Circuit in *Calderon v. United States District Court (Taylor)*, 134 F.3d 981, 985 (9th Cir. 1998), that permitted district courts to hold fully exhausted petitions (with unexhausted claims deleted) in abeyance pending exhaustion in state

---

[5] Subsection (b)(2) of § 2254, however, permits a district court to deny an unexhausted claim on the merits.

1  courts. *Rhines* explicitly recognizes the discretion of district courts to stay and hold in abeyance mixed
2  habeas petitions during exhaustion of federal claims in state court. 544 U.S. at 276. Recognition of this
3  discretion obviates the need for the withdrawal, abeyance, re-amend procedure developed in *Taylor*, 134
4  F. 3d 981.

5  Under *Rhines*, abeyance may be ordered under limited circumstances, restricted by the
6  satisfaction of three requirements. First, there must be good cause for the petitioner's failure to have
7  exhausted his claims "first in state court." 544 U.S. at 277. Second, the unexhausted claims must not
8  be "plainly meritless." *Id*. Finally, a mixed petition "should not be stayed indefinitely," meaning there
9  should be specific limits on the trip to state court and back to federal court. *Id*. at 277-78. While the
10 Court in *Rhines* did not define or give any examples of what may constitute "good cause" for not
11 presenting unexhausted claims in state court first or earlier, *Pace v. Digluglielmo*, 544 U.S. 408 (2005),
12 provides guidance by suggesting that good cause is satisfied by the existence of "reasonable confusion
13 about whether a state filing would be timely." *Id*. at 416.

14 **IV.    Analysis.**

15 The Warden contests Vieira's satisfaction of the "good cause" requirement under *Rhines*.
16 Specifically, the Warden maintains Vieira did not make a good faith effort to timely exhaust his state
17 court remedies and he is not reasonably confused about the application of the California Policies setting
18 forth timeliness standards for post-conviction petitions filed in death penalty cases.

19 **A.    Good Faith Effort to Timely Exhaust.**

20 The Warden disputes the notion that Vieira diligently investigated his claims. Citing *Pace*, the
21 Warden describes the situation considered by the United States Supreme Court to establish good cause
22 as premised upon a prisoner's good faith efforts to exhaust. *See* 544 U.S. at 416. Such good faith efforts
23 were found not to have existed in *Pace*. The Warden recites the salient dates in the course of Vieira's
24 direct appeal and then concludes, citing *Pace*, that because of the time elapsed, efforts to prepare a state
25 habeas corpus petition were not diligently or in good faith undertaken. Contrary to the Warden's
26 argument, Vieira's case history is not analogous to the case history at issue in *Pace*. In the facts
27 reviewed by the Supreme Court, Pace pleaded guilty to murder in February 1986, did not move to
28 withdraw his plea or appeal, but in August 1986 filed a post-conviction petition with the Pennsylvania

Court of Common Pleas. Ultimately that petition was denied as untimely by the Pennsylvania Supreme Court in 1992. *Id*. at 410. In November of 1996, with no intermittent proceedings, Pace filed a second post-conviction petition with the Court of Common Pleas. The law in effect in 1996, however, established a limitations period for state post-conviction petitions, subject to three statutory exceptions. Pace failed to address any of these exceptions in his second petition, and the Court of Common Pleas dismissed it in July 1997. *Id*. at 411. That dismissal was affirmed by the Superior Court in December 1998, and the Pennsylvania Supreme Court denied review in July 1999. Pace filed his federal habeas corpus petition in December 1999. *Id*.

Given these facts, it not surprising that the Supreme Court upheld the denial of statutory tolling or equitable tolling. *Id*. at 418. The case recites no facts demonstrating any efforts Pace undertook between the denial of his first post-conviction petition in 1992 and the filing of his second petition in November 1996. Moreover, he did not address the statutory exceptions to the limitations period which had already expired as to his claims.

In contrast, Vieira's case is rife with descriptions of overlapping and independent efforts to marshal the facts to complete investigation of his post-conviction claims. His state habeas corpus petition recites pages of explanation about the efforts undertaken by counsel to investigate "triggering facts" supporting habeas claims. The explanation is cogent and comprehensive. While the ultimate issue of timeliness need not and will not be decided here, the allegations are sufficient to make out a colorable case for good faith effort and diligence.

In a related argument, the Warden argues that California law does not permit a petitioner to "develop triggering facts" necessary for habeas claims. Citing *People v. Gonzales*, 51 Cal.. 3d 1179, 1259-61 (1990), the Warden argues habeas corpus is a means for vindicating "actual claims" not investigating "possible claims." He also cites federal authority for the proposition that habeas corpus is not meant to be "a fishing expedition" to determine the existence of a case. *Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999). In so arguing, the Warden suggests that Vieira's areas of investigation were unfocused fishing expeditions.

Without passing on the ultimate merits of the claims, the factual allegations set forth in the state habeas corpus petition are far from unfocused. Moreover, the term "triggering facts" utilized by Vieira

1 in his state petition and criticized by the Warden actually is derived from a California Supreme Court
2 case, *In re Sanders*, 21 Cal. 4th 697 (1999). In the state petition, Vieira cites this case for the proposition
3 that when appellate counsel becomes aware of "triggering facts" counsel "must investigate those
4 grounds." *Id*. at 708. Finally, the Warden's reliance on *People v. Gonzales*, 51 Cal. 1179, is misplaced
5 because the underlying facts are greatly distinguishable. In *Gonzales*, over ten years after the murder
6 for which defendant Gonzales was sentenced to death occurred, he filed a motion in the Superior Court
7 for discovery of the official file of the jailhouse informant who testified against him at trial. The request
8 was based on "recent revelations that a yet-unknown number of informants from the Los Angeles County
9 jail conspired to fabricate testimony in criminal cases during the period 1979-1988." *Id*. at 1255-56.
10 No information was presented that the informant who testified against Gonzales was among those
11 involved in the alleged conspiracy. *Id*. 1256, 1259. The requested discovery understandably was
12 perceived by the California Supreme Court as a fishing expedition "to confirm mere speculation or hope
13 that a basis for collateral relief may exist." *Id*. 1259-60.

14 In Vieira's case, the investigation conducted is reasonably characterized as claim development
15 based on preliminary information discovered by Vieira's original appellate counsel Mr. Rubin and then
16 given additional attention by Mr. Van Winkle. Due to lack of resources, information, and perhaps
17 experience, Mr. Rubin was not able to prepare Vieira's state post-conviction petition within the
18 presumptively timely period. The state petition alleges facts to comply with the absence of substantial
19 delay and good cause for substantial delay standards. A separate ground for finding good cause, if Mr.
20 Rubin was indeed dilatory, is his abandonment of the case. *See Sanders*, 21 Cal. 4th at 708-09. The
21 matter of equitable tolling during the period Mr. Rubin filed supplemental briefing in the direct appeal
22 proceedings also may be considered. All these factors will be weighed by the California Supreme Court
23 in determining timeliness.

24 With respect to claim development efforts undertaken since Vieira commenced this federal
25 action, the Court already has evaluated the reasonableness of the investigative effort by establishing two
26 phased case management plans. Some areas of requested investigation were disapproved, but many
27 others were approved based on careful review of facts known and leads previously followed. When the
28 Court perceived Vieira's federal litigation team was embarking on an unfocused or unproductive

investigation, authorization to proceed was withheld.  The result is that the investigation and claim development undertaken was authorized by the Court and necessarily pre-determined to be reasonably focused on cognizable claims.  Vieira made a reasonably good faith effort to develop his habeas claims, as circumscribed by Court oversight.  And he did so within the time limits established by statute and the Court's scheduling order.

### B.     Reasonable Confusion About the Timeliness Standards.

The Warden contends that for Vieira to show he is reasonably confused about whether his state petition is timely, he must demonstrate that California law, as applied to his case, promotes such confusion.  There is no authority for this proposition.  Then reciting the Timeliness Standard about presumptively timeliness (Standard 1-1.1) and mentioning California cases construing the Timeliness Standards about establishing the absence of substantial delay (Standard 1-1.2) and good cause for substantial delay (Standard 1-2), the Warden argues Vieira has failed to meet his burden.

As a preliminary matter, the Warden fails to acknowledge the fact that in August 2005, the California Supreme Court appointed associate counsel, Mr. Van Winkle, to assist (or take over) the litigation of post-conviction matters in state court.  Although the docket for the case does not reveal the California Supreme Court's reasoning, it is certain that good cause for Mr. Van Winkle's appointment was determined to exist.  Good cause specifically is mentioned in the docket entry.  This appointment casts initial doubt over the Warden's position that Vieira's state petition is presumptively <u>un</u>timely.  The findings on timeliness must be made by the California Supreme Court as a matter of comity.  Federal district courts have no business interjecting their views on purely state matters.

Second, there can be no serious dispute that the Timeliness Standards for capital habeas corpus petitions in the California Supreme Court lack definite time limits.  Only the presumptively timely period of 180 days provides any quantitative, objective guidance.  The other standards, establishing the absence of substantial delay and showing good cause for substantial delay are subjective.  This has long been a concern of federal courts analyzing California timeliness standards.  *See Morales v. Calderon*, 85 F.3d 1387, 1390-93 (9th Cir. 1996) (finding uncertainty and vagueness in the California timeliness standards in the context of determining the adequacy of untimely procedural bars).  The recitation in the Supreme Court Policies of three different kinds of situations establishing petition timeliness, plus the

potential for equitable tolling, demonstrates reasonable confusion.  In contrast to the facts in *Pace*, where there was no reasonable confusion about whether the filing of the state post-conviction petition was or was not timely, *see* 544 U.S. at 416, here there was.

**V.     Order.**

The facts presented and reviewed demonstrate that while Mr. Rubin could have done more in state court to advance Vieira's post-conviction claims, the appointment of Mr. Van Winkle reflects a tacit acknowledgment by the California Supreme Court that lack of attorney vigor should not be imputed to the client.  Since Mr. Van Winkle's appointment to the state case in August 2005, claim development has been proceeding at a rapid pace.  The three requirements for holding Vieira's federal petition in abeyance under *Rhines v. Weber* are met: (1) good cause is established based on diligence in pursuing exhaustion of state remedies and reasonable confusion about the California timeliness standards; (2) the claims set forth in the federal petition are not plainly meritless (and the Warden does not argue they are); and (3) the state post-conviction petition currently is on file before the California Supreme Court.  When the California Supreme Court renders a final decision on the state petition, Vieira is directed to immediately notify this Court of the result so further appropriate action can be taken and federal proceedings resumed if necessary.

The motion to hold federal proceedings in abeyance pending resolution of the state post-conviction petition is granted.  During the pendency of state post-conviction proceedings, Vieira will file quarterly status reports in this Court beginning January 15, 2007.

IT IS SO ORDERED.

Dated:          January 4, 2007

                                                                    /s/ Oliver W. Wanger
                                                                    Oliver W. Wanger
                                                                    United States District Judge